```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 1/19/22
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SECURITIES AND EXCHANGE COMMISSION,

                Plaintiff,

      - against -

SEETHRUEQUITY, LLC, AJAY TANDON, and AMIT TANDON

                Defendants.

18 Civ. 10374 (LLS)

MEMORANDUM & ORDER

On July 12, 2019, pursuant to consents to judgments submitted by defendants following the Court's April 26, 2019 Opinion and Order denying their motion to dismiss (Dkt. No. 21), the Court permanently enjoined defendants from violations of certain provisions of the Exchange and Securities Acts, and ordered that, upon motion of plaintiff the Securities and Exchange Commission ("SEC"), the Court shall determine the amount of civil penalties to be awarded and whether to impose any additional conduct-based injunctions. See Dkt. Nos. 25-27. The judgments further provided that in connection with such a motion,

> (a) Defendant will be precluded from arguing that he did not violate the federal securities laws as alleged in the Complaint; (b) Defendant may not challenge the validity of the Consent or this Judgment; (c) solely for the purposes of such motion, the allegations of the Complaint shall be accepted as and deemed true by the Court; and (d) the Court may determine the issues raised in the motion on the basis of affidavits, declarations, excerpts of sworn deposition or investigative testimony, and documentary evidence, without regard to the standards for summary judgment contained in Rule 56(c) of the Federal Rules of Civil Procedure.

See Dkt. No. 25 at p. 4-5.

The SEC now moves for Final Judgement imposing civil penalties against defendants Ajay and Amit Tandon, pursuant to Section 21(d)(3) of the Exchange Act and Section 20(d) of the Securities Act, in addition to certain conduct-based injunctions against all defendants and permanent officer and director and penny stock bars against the Tandons.

The motion is granted in part.

## DISCUSSION

The Court incorporates by reference as if fully repeated herein the Background section of its April 26, 2019 Opinion & Order.

Based on the misconduct set forth therein, the SEC seeks the imposition of $500,000 and $540,000 in civil penalties against Ajay and Amit Tandon, respectively, to enjoin all defendants from promoting, causing the promotion, or deriving compensation from the promotion of any issuer of any security, and to prohibit the Tandons from serving as officers or directors of a public company and from offering penny stocks. The Court addresses each category of remedies separately below.

### 1. Civil Penalties

Sections 21(d)(3) of the Exchange Act and 20(d) of the Securities Act authorize the Court to impose one of three tiers of civil penalties per violation of the respective acts, or

penalties based on the gross amount of pecuniary gain to defendants as a result of the violation. See Section 20(d)(2)(A)-(C) of the Securities Act, 15 U.S.C. § 77t(d)(2)(A)-(C) and Section 21(d)(3)(B)(i)-(iii) of the Exchange Act, 15 U.S.C. § 78u(d)(3)(B)(i)-(iii).

The SEC requests an imposition of penalties based on the "pecuniary gain" calculation, with additional amounts added to "ensure adequate deterrence". See Br. at 12. Specifically, the SEC requests that each individual defendant is penalized in an amount equaling one half of the total attendance fees that SeeThru received from the microcap companies during the relevant period ($500,000 in total, $250,000 each), plus $250,000 for deterrence. See id. The SEC further seeks "$40,000 for Amit Tandon based on his illegal scalping, which generated $20,000 of additional illicit profits." Id.

In determining whether such penalties are appropriate, the Court may consider, among other factors,

> (1) the egregiousness of the defendant's conduct; (2) the degree of the defendant's scienter; (3) whether the defendant's conduct created substantial losses or the risk of substantial losses to other persons; (4) whether the defendant's conduct was isolated or recurrent; and (5) whether the penalty should be reduced due to the defendant's demonstrated current and future financial condition.

SEC v. Haligiannis, 470 F. Supp. 2d 373, 386 (S.D.N.Y. 2007).

Here, defendants engaged in repeated misconduct by misleading investors and prospective investors in hundreds of fraudulent research reports, all while enriching themselves

through compensation from the covered companies whose price targets they intentionally inflated, and, in the case of Ajay Tandon, generating illicit profits by selling the covered companies' shares shortly after publication of the manipulated, inflated price targets ("scalping"). Defendants not only failed to disclose those compensation schemes with their investors, but actively concealed those relationships, stating that the reports were "unbiased", "not paid for" and created using an objective model (Compl. ¶¶ 31, 36-37, 42), all while knowing that the price targets published therein were false. Disseminating such materially false information into the market created a significant risk of substantial loss to the investing public. See SEC v. Universal Express, Inc., 646 F. Supp. 2d 552, 568 (S.D.N.Y. 2009) ("[Defendant's] dissemination of materially false information create[d] a significant risk of substantial loss to the investing public").

Those facts weigh in favor of the imposition of civil penalties.

Defendants have, however, presented evidence of significant financial constraints (see Opp. Br. at 5-6), warranting a reduction in the amount of penalties imposed. Accordingly, judgment will be entered against Ajay Tandon for $250,000 in civil penalties (reflecting the $250,000 in pecuniary gain in compensation from the microcap companies, without an additional

$250,000 in "deterrence" penalties). Judgment will be entered against Amit Tandon for $270,000 in civil penalties (similarly reflecting the $250,000 in compensation, plus an additional $20,000 in profits earned from scalping).

### 2. Injunctions Relating to the Promotion of Any Issuer of Any Security

Section 21(d)(5) of the Exchange Act also authorizes the Court to impose "any equitable relief that may be appropriate or necessary for the benefit of investors." Pursuant to that provision, the SEC asks the Court to enjoin defendants from "promoting, causing the promotion, or deriving compensation from the promotion of any issuer of any security." Br. at 13.

In deciding whether such equitable relief is appropriate, the "ultimate test is whether the defendant's past conduct indicates . . . that there is a reasonable likelihood of further violation in the future." SEC v. Commonwealth Chem. Sec., Inc., 574 F.2d 90, 99-100 (2d Cir. 1978) (internal citations omitted) (alteration in original). The following factors are relevant in that determination:

> the fact that [the] defendant has been found liable for illegal conduct; the degree of scienter involved; whether the infraction is an "isolated occurrence;" whether [the] defendant continues to maintain that his past conduct was blameless; and whether, because of his professional occupation, the defendant might be in a position where future violations could be anticipated.

SEC v. Bronson, 246 F. Supp. 3d 956, 974 (S.D.N.Y. 2017), aff'd sub nom. United States Sec. & Exch. Comm'n v. Bronson, 756 F.

App'x 38 (2d Cir. 2018), as amended (Nov. 20, 2018)(internal citations omitted)(alterations in original).

For the purposes of this motion, there is no dispute that defendants are liable for the illegal misconduct. And, as discussed above, their fraud involved a high degree of scienter, as defendants knew their reports were false, induced payment based on the publishing of those false reports, and intentionally concealed any evidence of bias in their reporting. That misconduct was repeated over several years, far from an isolated occurrence, and while SeeThru may no longer be in operation, the relatively young ages of the Tandons and their backgrounds in the industry suggest a reasonable likelihood of future violation.

As the SEC points out, here, the "nature of the fraudulent misconduct involved precisely the type of conduct sought to be enjoined here, *viz*, misconduct relating to the promotion of other companies' securities (and deriving compensation for such promotion)". Br. at 15. Therefore, the requested relief is not overly broad or vague, and the Court finds it appropriate, based on the facts stated above, to permanently enjoin defendants from promoting, causing the promotion, or deriving compensation from the promotion of any issuer of any security.

### 3. Officer and Director and Penny Stock Bars

Where a defendant has been found liable for violating

Section 17(a)(1) of the Securities Act or Section 10(b) of the Exchange Act, the Court may prohibit the defendant from serving as an officer or director of a public company "if the person's conduct demonstrates unfitness to serve as an officer or director." See Section 21(d)(2) of the Exchange Act, 15 U.S.C. §§ 77t(e) and 78(u)(d)(2). Six non-exclusive factors that are useful in making the "unfitness" assessment include,

> (1) the egregiousness of the underlying securities law violation; (2) the defendant's repeat offender status; (3) the defendant's role or position when he engaged in the fraud; (4) the defendant's degree of scienter; (5) the defendant's economic stake in the violation; and (6) the likelihood that misconduct will recur.

SEC v. Bankosky, 716 F.3d 45, 48 (2d Cir. 2013)(internal citations omitted). Courts also consider the defendants' acknowledgment of wrongdoing and the credibility of his contrition. Id. at 49.

Section 21(d)(6) of the Exchange Act and Section 20(g) of the Securities Act further authorize a district court to impose a penny stock bar "against any person participating in, or, at the time of the alleged misconduct, who was participating in, an offering of penny stock." "The standard for imposing such a bar essentially mirrors that for imposing an officer-or-director bar." SEC v. Universal Express, Inc., 475 F. Supp. 2d 412, 429 (S.D.N.Y. 2007), aff'd sub nom. SEC v. Altomare, 300 F. App'x 70 (2d Cir. 2008).

Several of those factors --the egregiousness of defendants'

-7-

violations, high degree of scienter, and likelihood that their occupations will present opportunities for future violations-- weigh in favor of the requested bars. In addition to those factors, it is notable that defendants Ajay and Amit were central actors to the fraud, given their positions at SeeThru, Ajay as its sole member and CEO, and Amit as Director of Research. Further, the Tandons had a personal economic stake in their violations (through receipt of compensation and scalping), and have expressed no remorse for their activities, other than asserting they will "not engage in the business of disseminating stock research reports ever again." Opp. Br. at 11.

While not entirely clear, the term "repeat offender" does not, in cases in this Circuit, describe multiple violations as part of a unified scheme, but the recidivist who repeats the violation after prosecution for committing the earlier one. In that sense, at least, defendants are not "repeat offenders". See, e.g., SEC v. Bankosky, 2012 WL 1849000, at *2 (S.D.N.Y. May 21, 2012), aff'd, 716 F.3d 45 (2d Cir. 2013).

Based on those considerations, and given the punishments already imposed on defendants, the Court finds that a five-year officer and director and penny stock bar is sufficient to deter further misconduct and protect the public. See SEC v. Patel, 61 F.3d 137, 142 (2d Cir. 1995)("[B]efore imposing a permanent bar, the court should consider whether a conditional bar (e.g., a bar

limited to a particular industry) and/or a bar limited in time (e.g., a bar of five years) might be sufficient, especially where there is no prior history of unfitness.").

## CONCLUSION

For the foregoing reasons, the SEC's motion is granted in part, and the Clerk of Court is instructed to enter Final Judgment as follows:

An amount of $250,000 in civil penalties is imposed against defendant Ajay Tandon.

An amount of $270,000 in civil penalties is imposed against defendant Amit Tandon.

Defendants shall be permanently prohibited from promoting, causing the promotion, or deriving compensation from the promotion of any issuer of any security.

Defendants Ajay and Amit Tandon shall be prohibited for a period of five years from acting as an officer or director of a public company, as defined in 15 U.S.C. §§ 77t(e) and 78(u)(d)(2), and from offering a penny stock.

So Ordered.

Dated:   New York, New York
         January 19, 2022

                                   _Louis L. Stanton_
                                   LOUIS L. STANTON
                                   U.S.D.J.